Members of the Court, Mr. Groke, my name is Ken Legacki. I represent Sally Kinney. The first issue I'd like to address is the granting of summary judgment on behalf of the employer against the employee in this Family Medical Leave Act case. As I understand the United Circuit rule here is that this is de novo and you do act as if you were at the trial court in hearing this evidence of whether or not to grant summary judgment. In a recent case that just came out a few weeks ago, you take all justifiable inferences for on behalf of Ms. Kinney and you find that justifiable inference is not necessarily the most likely inference or the most persuasive inference, rather an inference as to another material fact may be drawn in favor of the nominating party if it is rational or reasonable. The issue in this particular case is Ms. Kinney had been an employee of Holiday Stores. She was working. Her cancer came back. She notified the district manager that my cancer came back and actually showed her the prescription she was taking. Shortly thereafter, as she was taking the drugs, she had an adverse reaction. And as the record indicates, Ms. Kinney is the kind of person that does not, is a very ethical person in the sense of a hardworking person. She did not want to leave the store short-sighted, so her plans were to go to the store, ask to be left home because of the adverse reaction that was occurring. She was not, she did not, was not let go. But there are requirements under the Act and under the cases that suggest that you have to ask for leave. Just saying that you have cancer and you're not feeling well is not enough. Isn't that where we are in terms of the law? Well, since I disagree with that, Your Honor, in a sense because I think that this is not the first battle with cancer she had. And when she came back, she notified her superiors, I have cancer, he came back, I'm taking these drugs. This all has to do with March 13th, 2007. Isn't that the key here? No, I believe it's before that, Your Honor. Well, the question is that's where it's been narrowed to that day. But we're talking about notice prior to March 13th. She gave notice that her cancer came back and she was taking these drugs. Did she ask for leave under the Act? No, no, no. She did not. And when she first got diagnosed with cancer, she did not ask for leave. And she had not begun to take the drugs that she was, or the student drugs. And it was only when she started to take the drugs that she started to develop the adverse reactions. But the employer was on notice that she had a medical issue, a serious medical condition. She had cancer. And the question is what happens when you're going through that process, when you start to react to that, anybody who's been around people with cancer knows sometimes on chemotherapy there's good days and bad days. And this was particularly one of her bad days. And the student, in fact, got so bad that they had to take her off of her because of her adverse reactions after she was terminated. What's the injury that your client asserts in this lawsuit? What are you trying to get recovery for? Well, she worked that day. And I don't see her really claiming something ill that happened to her from working that day. So what exactly is this lawsuit aimed at? Well, she was terminated, Your Honor. And the issue is, was the termination from that job connected to the fact that she was requesting to exercise her rights under the Family Medical Leave Act to ask for, look, I'm sick, I need to go home? It really isn't so much should she have been given that day off, because I don't think she's claiming damages for having worked that day. No. No, Your Honor. The issue is a broader one. You're making the allegation that because the company knew of her illness, it decided to terminate her. That's correct, Your Honor. And you've argued that the secret shopper, smoker, cigarette ID is a pretext. Is that correct? Well, Your Honor, we first wanted a yes. The evidence was that she asked to be let go home that day, and then coincidentally the secret shopper came in that day that she asked to be let home. So initially you think, well, geez, was that the reason, was that the cause? But then as discovery goes further, we've realized that the basis for her termination was that allegedly that was her second violation within a year. It turns out there is no documentation of that first violation. I want to get the facts on this part clear. Is it contested as to whether or not she violated the cigarette policy on that day in March? No, Your Honor. So your issue is whether the first occasion, which is supposed to have taken place I believe the preceding November, whether in fact she did violate the policy such that this was the second violation under the company's policy. That's correct, Your Honor. And you've argued that there was no documentation. If I understand correctly, and this is from looking at the depositions, it was her testimony that she doesn't recall the first violation and that she had left the store by the purported time of the violation. So at least as an issue of fact, there is a dispute as to whether there are in fact two occasions where she violated the policy. That's correct, Your Honor. So the basis for their termination, we argue, as we went back up the line to the depositions, initially as I put in my brief, when Sally Kinney was first deposed, she was the first person, we've asked for these documents, and that was where the representation was made, oh, we destroyed those documents. But as we went down the line, we realized that that was not the company policy as it was stated by the opposing counsel. I believe in all seriousness there was an innocent representation, misrepresentation. I remember all that, but I'm also not sure why it matters because it appears to be a contested issue of fact of whether this was the first or the second. That's correct, Your Honor. The issue of documentation, I understand your interest in it, but as a summary judgment matter, I'm not sure that it really means much to me at least because all I know is there's a dispute as to whether the first event occurred or not. There's no documentation that's conclusive, so that's disputed. Well, the question is, Your Honor, as Mr. Gasek was in Minneapolis who was the new resources person for the entire company, and then local district manager discussing, for example, did she ask for family medical leave, and that was the wrong question. I think the question should have been should we have offered family medical leave when that occurred, but why was she terminated when there's no evidence of a first violation when the company policy says on your second violation you're terminated. So my question is, is that a pretext that to raise this issue, oh, this is her second violation, so therefore we can now fire her, and the law is quite clear. The fact, if you do something wrong, even though it's in the process of asking for family medical leave, if there's good cause to fire you, they can fire you. So was there a good cause here? Was there a good reason to fire her? No, there was not, based on the company's own policy. So that raises the issue. It's one step more than that, because I think the law is also the case if the company thought there was good cause, even if it happened to be wrong, but if it thought it had a valid separate reason and was not, in fact, motivated by something that would violate the Family Act, then you can be wrong but legally proper. I guess that's an interpretation. I think business backholder, Your Honor, I thought held it almost like a strict liability offense, even though if you violate the person's rights or interfere with their rights. My point is, if they didn't, if in fact her medical condition had nothing to do with her termination, they were simply wrong because of mistaken records as to whether it was her second violation of the secret shopper approach, they could still be on fair ground, not violating the Medical Leave Act. But is that a question of fact? Well, that's something else again. I'm just trying to say, you've defined the law, and I'm saying the law may not be quite where you're drawing the line, that's all. I think the question is, when it was going back to the union resources person and the union resources person and all these people down the line have to sign off on this documentation. Not only does the store manager, the district manager, and if you look at some of the examples, even the union resources person in that one, I think in one of the exhibits, there's a stamp that Joe Gacic back in Minneapolis has to sign off that this person got retrained. So the question is, and as the woman, as the secretary said and Mr. Filippi, who was the compliance officer said, we maintain all those files. So when she's getting fired for the second time, all they have to do is go down the hall and say, let's see the paperwork from the first one to confirm. And they never did that. And although Mr. Gacic said, I usually look at the files, but in this particular case I did not. And we know it because Mr. Gacic had a discussion in his own handwritten notes that mentioned family medical leave, because they knew there was an issue in this particular case. So they're not totally in the dark. Well, I guess procedurally I don't understand how this, how all this works. Your complaint alleged causes of action under the Family Medical Leave Act. That was it. The district court granted summary judgment because there was no, the defendant said that there was no sufficient showing or there was, that you had asked for a leave under the Medical Leave Act or that the defendant had interfered with it, so therefore it granted judgment for the defendant. I think if I understood the court, it said it was the notice, it was not good notice, because on that particular date, it was not good notice. But my argument is that it wasn't notified that she was ever taking any leave, and so therefore it didn't deny any request for family medical leave and it didn't interfere with her ability to ask for it. Now, what, so just explain to me, what's wrong with that? Well, Your Honor, I think the court, as Justice Clifton put it out, well, isn't just on March 30th, 13th. My argument is there was notice that she was suffering from cancer and it was a normal consequence of her. I understand that there was notice that they knew that she had cancer. I don't see how that translates to the, I'm not following how that translates to the. Interference? Yeah, and to either the interference or the denial of request to take the medical leave that she's now claiming. Well, there's two, if I may, I believe there's two prongs to that. One is on that particular day when they knew she was undergoing chemotherapy, taking these drugs, and she was complaining about ill effects of these drugs, and the policy was that if she asked the store manager, say, I'm not well, let me go, the store manager is supposed to let her go home, and they did not do so. That's the one issue. The second issue is why is it that shortly thereafter this she is terminated from this job when the issue of cancer coming back and it's going to be using, and this is the first episode, it's like saying somebody, well, I'm going to need surgery in another week or so, and they say, oh, we're going to terminate you. What's a very similar incident, I think, is that when she said, brought to their attention that she was going to be sick, she was going to have cancer, and, you know, probably be going to be missing some work, my argument is that they created this fabrication in the sense, oh, you violated the. It's kind of like, as Judge Clifton said, it's kind of like a pretext argument. That's correct. How did the district court, how was that presented to the district court, and how did the district court deal with it? The court never dealt with it, Your Honor. Well, that's what's troubling me. So how was it presented to the district court? Well, the issue, I guess, presented to the court was that she was, after she asked for leave at that time and then this issue came up, then she was terminated. And as discovered, initially, I think the No, in response to a motion for summary judgment, how was this presented to the district court? I believe all the facts were laid out as to why we believe that she was terminated is to, there was no evidence to terminate her, there was no basis to terminate her, that the termination was a pretext for asking for leave. I think that we, if I remember correctly, Your Honor, I made all those arguments in the court, and I even made the issue about, I believe, the proximity that's stated in lieu, that when a complaint is made and all of a sudden you get terminated, that, you know, there is an issue there. But we asked for leave and they knew this was an issue and that there was no evidence to terminate her at that time. Do you want to say something about the denial of the motion to amend? Thank you, Your Honor. Initially, as this court could take judicial notice under Alaska law, here in Alaska, the loser has to pay attorney's fees. So before we file a complaint, we have to. The issue here is the seven months delay. As we're going through the process of this, Governor, Your Honor, we went through local here in Anchorage and we flew back to Minneapolis. And as we went through this process, we initially represented at the beginning, very beginning of the case, that these documents that were allegedly that should have been kept in track were destroyed routinely. And as we go through the process, we find out that, no, that's not the case, that the company policy is such that they keep those documents. And then when the human resources person in Minneapolis was deposed, he said it would be a violation of company policy to terminate somebody if they had not had two stings. So that's where I think we – that's where I think the violation comes in, Your Honor. When we got the information, we moved to amend the complaint to say, look, they're now conceding almost admission that there was a breach of the contract because he admits that, no, we should never have – if it was never a second sting occurred, we should never have fired us. It's Rule 16's good cause standard that applies, isn't that right? That's correct, Your Honor. Is that the first time that you learned the company's policy was the two-sting policy, that a single episode would not have been submission to justify termination? Oh, no, Your Honor. The – from the onset, they said that was her second failure. Then what is it that you learned new with that deposition that you didn't know before? That the company admitted that it would have been in violation of their own personnel policy to terminate someone if they did not have a second sting. If we had confirmation of proof that they had – see, initially it was like, oh, the records were destroyed, but we had this printout sheet that says there was a sting in November, and as we went through the progression of the depositions, it confirmed that my client said, I had never had one in the beginning. I don't recall anything. And when you – they said they had a secret shopper and all the – and so forth. When the secret shopper testified, she described somebody different in the sense of short black hair. And so – So you knew that she was told she was fired because of two episodes. You knew that she thought there was only one episode. What you didn't know and say you learned in the deposition was that company policy would have not permitted her termination unless there were as many as two. And it was a confirmation, Your Honor, of her. It was – you know, the issue of the second – the violation is what's assumed in our initial argument of the Family Medical Leave Act, that they had no basis to terminate her. And so when it was confirmed on the right, yes, it is a violation of our policy, and basically we should not be terminating anybody. I think – and that's when the final – to me, the final nail in the coffin. Okay. You're over time. Thank you. Thank you. Good morning, Your Honors. May it please the Court, my name is Michael Droke, appearing on behalf of Holiday Companies. And this is a case that's been fully briefed on all sides. I wanted to raise just a couple of very brief points, and then be available for questions from the bench. The applicable regulations here were clarified in 2009, and I provided this information in a 28-day submission, in two ways that I believe are dispositive to this case, in particular on the issue of notice. First, there was a specific statement by the Department of Labor that calling in sick is not sufficient to put an employer on notice, that that particular absence is FMLA-qualified. That really mattered. I mean, if the case isn't about the failure to let her go that day, and it doesn't sound like it is, the case is really about her termination, and whether she was terminated in order to avoid future absences and future taking advantage of the Family Leave Act. Does the notice issue really amount to anything? Well, I think it does for a couple of reasons. First is I reject the premise that that's what the case is about. What you've heard this morning is a bootstrapping conflagration of the arguments in the motion to amend, which, as Judge O'Scanlan recognizes, is based on a good cause standard. And really what's pled in the complaint and was argued before the district court, which is an interference claim. And that's what the case has been about. It's what was argued to the district court, and it's what this court itself has held in Batchelder, that the issue under the FMLA, and the specific question raised here, is whether the employer in any way interfered with the employee's taking of or use of FMLA. Termination is or is not part of the case? I don't honestly see it as part of the case, Your Honor, because... Is the case only about whatever she suffered because she wasn't allowed to go home that day? This is a case in which the plaintiff is... Try my question first. Is this case solely about what she suffered, what injury she suffered, as a result of not being allowed to go home that day? Yes. And what kind of injury has she claimed as a result of that? She is claiming that she was required to continue to work, that during the pendency of that leave of absence she was stung by a secret shopper, and as a result of that, Sting was terminated. And in essence, what we contend is that that statement is, or that the proposition that by having been placed in, you know, quote, unquote, harm's way, by being allowed to continue to work and be there for the secret shopper, the plaintiff is claiming that she was somehow terminated and her rights were interfered with under the FMLA. And so it really is all bound up in both the pleadings to the district court and the FMLA argument. And that concept of causation has been rejected, again, in a submission that I made this week, a 28-J submission by the SHAF decision, that the approximate cause of her termination was clearly her, the fact that she sold a tobacco product to an individual without carting them first. It happened that the secret shopper came in the same day that she wanted to go home sick. Correct. Coincidentally. That's why this becomes sort of, things get conflated. But I'm sort of handicapped here because I can't find, in the excerpts, I couldn't find either the complaint or the motion for summary judgment or the response to the motion for summary judgment. There are a lot of declarations and depositions. But can you help me on how this question of pretext or whatever got to the district court? Because the district court didn't deal with it in its order on summary judgment. And in its order on the motion for reconsideration, it said that this is really about what happened on that day. Correct. You know, I don't recall the argument and was not personally present for that argument. No. That's helpful. Sorry. The court was obviously aware of the secret shopper and was aware of the contention that there was or was not a second violation. I couldn't find the complaint either. Do you have the record side to it? It's ER 163. 163. The facts and the actual testimony that occurred is that the plaintiff couldn't recall, one way or the other, whether she had had a prior sting. And we did have unequivocal statements. There was specific testimony where she said there wasn't a prior sting. She may have said elsewhere that there was. Yes. I missed that. But she was pretty emphatic in saying not only that she didn't recall it happening the first time, but the person that came in came in in the afternoon and the plaintiff left before 1 o'clock that day. She described me as short, brown hair. And she's clearly denying that the first episode took place. If that is in the case, it seems to be hard to justify summary judgment to say that the company properly exercised a policy of second sting and you're out if there's a dispute as to whether there was a first sting. Well, and there I would disagree with that proposition because as the – Which part, whether it's in the case or whether there were two stings? Well, the real issue is whether even if there were an arguable, I would suggest unreasonable inference, but even if there were an arguable inference of whether the first sting occurred or not, that's not a material dispute of fact because there is no question that the basis of the employer termination was the fact of the sting that occurred on March 13, 2007. If the company policy is that it takes two stings, and we've just heard there was testimony to that effect, then it would be a violation of company policy to fire after the first, and if it's disputed whether there was a first, how is that a subject of summary judgment? Well, I would bring the court's attention to two components. First, there's a question resolved by the district court as to whether the employer actually was on notice of a request for FMLA on that day. I don't understand the relevance of that at all. To a termination claim? Who cares? Their position is that she was terminated specifically so as to avoid giving her FMLA leave after having been told that she was sick on that day. Not just that day, though. Her position is that they knew she had a chronic illness, which you concede in your brief, and that this was a pretext for getting rid of this person who was going to take advantage of the act in the future by manufacturing this theory that she was stung twice, when in fact she disputes whether the first one ever occurred, and it's argued that company policy requires two. Now, if there's a dispute as to whether there's two, how is that not a genuine issue of material fact for purposes of summary judgment? Well, the key thing is, Your Honor, it's not a genuine issue of material fact. The court, the Ninth Circuit law and other jurisdictions is replete with the understanding that even a mistaken view, which we, again, would not concede. And I articulated that to the plaintiffs' counsel, which you surely heard. What I don't see in the record is any documentation that makes it undisputed, that in fact there was two stings, because the company hasn't come up with any documentation demonstrating the first. So how can I say as a proposition of law there's no doubt that that's the only reason the company fired her, if the company itself can't document that the first episode existed and she denied it? There is record evidence, including testimony of the person engaging in the sting, that the sting occurred and that the plaintiff was the one stung in the situation that happened in November. Exactly. And they've got testimony from her saying it didn't. So how is that not a genuine issue of material fact? And, again, there also is evidence in the record that the basis for termination was the fact of the stings and not any other basis. The fact of the single sting or the fact that the sting was the second sting? Well, the fact that the second sting was in violation of the policy, and, again, meaning that it was the second sting. So if we don't know the first one existed, how is it not disputed that there were two stings? I mean, I grant you the company could be mistaken and act in compliance with the law, but we don't have anything that documents, at least, that the company, in fact, thought there were two stings. The, you know, again, I come back to the same proposition, which is that whether there was or was not a first sting is really immaterial to the issue of whether there's any evidence to support a pretext theory. She's not making a claim of wrongful termination. Correct. Is that right? That's correct. So in order to succeed or to further, she would have to create a genuine issue of material fact as to whether she was terminated on account of medical, her invocation of the Medical Leave Act. I believe that's correct. More or less, yeah. And your position is that she hasn't done that. Correct. Adopted by the district court as well. Yeah, and your position is that the fact that they weren't enforcing, they didn't enforce their policy correctly in her case as to the two sting, which is the reason that the company gave for terminating her, that that is, that even assuming that they weren't applying the policy correctly, that it was nevertheless the reason for her termination and she hasn't created any issue of fact as to that. She might have a state court action for something. Is that? That's essentially correct. And we're well beyond the issues presented here to the district court. What's the test on pretext here? Is there enough evidence in the record to justify the conclusion that whether the first sting occurred or not, at least on the 13th of the month, the management believed that there was a first sting? There's absolutely evidence to conclude that the management believed there was a first sting. There's also evidence, clear in the record, that the plaintiff here had taken FMLA from time to time here and there, including as recently as five months before without any incident, that she was able to call in sick with impunity from time to time, whether that was a normal sniffles-type illness or, in prior situations, an FMLA absence. So there's no question that this was an employer who frequently accommodated Ms. Kinney's request to take time off, whether she was sick or taking FMLA. The hook that the plaintiff is trying to suggest is that with the fact that this particular illness, that morning where she claimed she wasn't feeling well, was feeling sick, and was feeling tired, that was the trigger for termination based on a sting that occurred at that time and based on the employer's belief that this was the second sting that had occurred for her. And that premise was specifically rejected by the court because the district court said that the statements made by Ms. Kinney on March 13, 2007, was a matter of law insufficient to put the employer on notice either of her assertion of FMLA rights that day or of the contention that she should have been placed on leave of absence that day. And so the plaintiff's argument is that this was an employer who frequently accommodated Ms. Kinney's request to take time off, whether that was a normal sniffles-type illness or an FMLA absence that occurred at that time. And so the plaintiff's argument is that this was a matter of law insufficient to put the employer on notice either of her assertion of FMLA rights that day or of the contention that she should have been placed on leave of absence that day. I don't understand an argument or don't follow an argument that says whether she asked for leave that day or not makes any difference whatsoever to the potential claim, which you say has not been made in this case, that she was terminated in order to avoid future claims under the Act. Is there anything that would justify a substantive determination on that broader termination theory? In my view, the plaintiff has presented no evidence to suggest that there is any pretext, in fact, other than as the court heard. Let me try this. I mean, you've conceded in your brief that the record is clear that Holloway was aware of Kinney's chronic health condition at that time. Yes. And that's the day she took the Act that ultimately led to her prompt termination. Correct. So if we have the notion the company is aware, was aware that she'd taken leave in the past and would be likely to take leave in the future because of the condition, if the company, in fact, terminated her based on a violation of the company's own policy because there hadn't been a second sting, this was only the first, wouldn't that be the makings of a prima facie case? Not based on the theory that's presented by the plaintiff here. See, that's what I'm saying. I'm trying to figure out what's in the case and what's not. And I understand your argument that says the plaintiff hasn't presented that claim in this complaint. But if that claim were clearly in the case or if that claim was to be presented in a separate proceeding, I don't know if the statute's running on it or not, I don't see something that precludes the possibility of that argument based on what you've given us so far. Because as far as we know, there's a genuine issue of disputed facts with regard to whether this was sting number one or sting number two, and the company policy is to require two stings. The, you know, my response would repeat prior statements. I suspect my question repeated prior statements. Are there any further questions?  Thank you. Thank you, Your Honors. Well, you've used your time, but we'll give you 30 seconds if you want to say something further. Regarding the summary judgment you asked about the opposition, at page 8 of 14, Your Honor, on my opposition, I captioned the how the defendants created a pretext in order to prevent Sally Kinney from exercising her Family Medical Relief Act rights. That issue was, I believe, the second. Thank you. That's going to be it. Right. No, I'm sorry. I'm sorry. You've used your time, so we'll thank you for that citation. The matter just argued is submitted for decision.
judges: Schroeder, O'scannlain, Clifton